UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JALON G. RANEY, | ) | No. CV 11-3220-PLA |
| Plaintiff, | ) ) ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 20, 2011, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on May 26, 2011, and June 9, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 22, 2011, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on May 29, 1966. [Administrative Record ("AR") at 57.] He completed two years of college, and has past relevant work experience as a driver, transporter, meat clerk, stuntman, and salesperson. [AR at 121, 124, 171.]

On February 1, 2008, plaintiff protectively filed his application for Disability Insurance Benefits, alleging that he has been unable to work since September 28, 2007, due to myasthenia gravis disease. [AR at 57, 89, 119-25, 154-60.] After his application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 58-63.] A hearing was held on October 29, 2009, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 24-53.] A vocational expert also testified. [AR at 46-50.] On November 16, 2009, the ALJ determined that plaintiff was not disabled. [AR at 13-20.] On February 12, 2011, the Appeals Council denied plaintiff's request for review. [AR at 1-5, 9.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date, September 28, 2007. [AR at 15.][1] At step two, the ALJ concluded that plaintiff has the severe impairment of myasthenia gravis. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform "light work" as defined in 20 C.F.R. § 404.1567(b),[3] except that plaintiff "can lift and carry 15 pounds occasionally, 10 pounds frequently, can stand and walk six hours of an eight hour day, can sit six hours of an eight hour day, is limited to frequent climbing, bending, balancing, stooping, kneeling, crouching and crawling and is precluded from jobs requiring good binocular vision." [AR at 16.] At step four, the ALJ concluded that plaintiff was not capable of performing any past relevant work. [AR at 18.] At step five, the ALJ found, based on the vocational expert's testimony and the application of the Medical-Vocational Guidelines, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 19.] Accordingly, the ALJ

---

[1]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through September 30, 2013. [AR at 15.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   20 C.F.R. § 404.1567(b) defines "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

determined that plaintiff was not under a disability at any time from his alleged disability onset date of September 28, 2007, through November 16, 2009, the date of the decision. [AR at 20.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly evaluate his credibility. [Joint Stipulation ("JS") at 3.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Plaintiff testified, in part, that he has difficulty breathing and getting around, and that he depends on others "a lot ... to do things for [him]." [AR at 34.] He further testified that he has

problems carrying things -- such as a bag of groceries -- for "a distance" because he becomes short of breath and experiences muscle fatigue. [AR at 44.] Plaintiff stated that after sitting for one to two hours, he gets tired and falls asleep. [AR at 35.] He also stated that he spends at least six hours sleeping during the day (i.e., "between breakfast and dinner"), and that he has done so every day for the last two years. [AR at 40.] When he gets fatigued, he can move around for a minute to combat it, but will become sleepy again once he stops moving. [AR at 44.] Plaintiff testified that when his condition "gets bad," he loses functioning ability in his hands and cannot walk very far. [AR at 36.] He also testified that he has "bad" periods of up to several months about four times a year. [AR at 43.] In addition, plaintiff represented that he gets double vision, which requires that he close one eye to read and to avoid tripping over things, and which causes his equilibrium to be "off." [AR at 42.] His vision problems also sometimes keep him from driving. [AR at 38.] In a Exertional Daily Activities Questionnaire plaintiff completed on March 14, 2008, he stated that when out walking, he usually needs to "stop and rest every 5 to 10 minutes to catch [his] breath and recover from the weakness in [his] legs," and that he needs to rest every 6 to 8 stairs when climbing stairs. [AR at 137-41.] He also stated that he gets out of breath easily when helping with chores such as the dishes or dusting, and that he can only do 5 percent of the chores around the house (compared with 100 percent before his illness) "because of tire[d]ness and weakness." [AR at 140.] Finally, he stated that he needs to take naps or rest periods at least three times a day. [AR at 139, 141.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." [AR at 16.] At step two, then, as the record contains no evidence of malingering by plaintiff,[4] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting his subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

---

[4] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

The ALJ found plaintiff "only partially credible" because he found plaintiff's statements concerning the severity of his impairments to be inconsistent with: (1) the objective medical evidence; (2) plaintiff's medical improvement; and (3) his conservative course of treatment. [AR at 17-18.]

In discussing his first reason to discount plaintiff's subjective symptom testimony, the ALJ summarized four medical reports contained in the record, stating that plaintiff's "[s]ymptoms relative to myasthenia gravis have improved with prescription medications."[5] The ALJ also asserted that "although [plaintiff] testified that he frequently naps, there is no support in the record for the kind of fatigue that would preclude him from staying awake at a less than physically demanding job." [AR at 17-18.] However, a lack of objective medical evidence "cannot form the sole basis for discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). The Commissioner considers both pain and fatigue to be subjective symptoms, and analyzes testimony concerning them using the same two-step analysis. See 20 C.F.R. §§ 404.1529(b); 416.929(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."); see also Blakeman v. Astrue, 509 F.3d 878, 879 (8th Cir. 2007) ("Fatigue is one of the subjective symptoms that must be considered when ... it is cited by a claimant as a cause of his disability and a medically determinable impairment 'could reasonably be expected to produce' that symptom." (quoting 20 C.F.R. §§ 404.1529(b); 416.929(b))). "[A] claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Nor must a claimant present objective medical evidence of a causal relationship between the impairment and the type of symptom. See id.; see also Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("[O]nce an impairment is medically established, the

---

[5] This contention by the ALJ is further discussed infra.

7

ALJ cannot require medical support to prove the severity of the pain."). Rather, the claimant need only "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell, 947 F.2d at 344 (internal quotations omitted). This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain and other such symptoms," Smolen, 80 F.3d at 1282, such that "[t]he amount of pain [or fatigue] caused by a given physical impairment can vary greatly from individual to individual." Id. (internal quotations omitted).

Plaintiff's medical records document his complaints of double vision, eyelid drooping, shortness of breath, limb weakness, and fatigue. [See AR at 181, 183-84, 186-87, 196, 239-42, 255-72, 277-315.] Dr. James Wei, plaintiff's treating neurologist [see AR at 212-14, 231], consistently diagnosed plaintiff with myasthenia gravis, and the ALJ concluded the same. [AR at 15, 181, 183, 187, 194, 196, 241, 244, 251, 256, 262, 268, 278, 284, 295, 299, 305, 312.] Because plaintiff produced medical evidence of an underlying impairment that the ALJ determined could reasonably be expected to produce his alleged symptoms, objective medical findings are not required to support plaintiff's testimony concerning their severity. Bunnell, 947 F.2d at 344-45; Smolen, 80 F.3d at 1282. Thus, a lack of corroborating objective evidence was an insufficient reason, on its own, for the ALJ to find plaintiff less than fully credible.

Second, the ALJ also discounted plaintiff's credibility because he found that "[t]here is evidence of medical improvement as medical records show that his course of medications help[s] him control his symptoms." [AR at 17.] However, this finding by the ALJ is not supported by the two reports he cites, or by the evidence in the entire record. In making this conclusion, the ALJ cited an October 4, 2007, treating note in which Dr. Wei indicated that "[s]ince [plaintiff's] last visit, [plaintiff] states that his symptoms have been stable, about the same" [AR at 17, 178], and a March 28, 2008, report by a consultative examiner ("CE") who stated: "[plaintiff] is on Mestinon and [P]rednisone, which help control his symptoms to some extent. He still complains of residual weakness, blurred vision and shortness of breath." [AR at 17, 207-11.] First, the statement from Dr. Wei's treating note was based on plaintiff's own reports to Dr. Wei concerning his symptoms. It was improper for the ALJ to rely on this isolated report by plaintiff that his symptoms were stable

in order to reject plaintiff's statements concerning the severity of his symptoms when they were more severe or <u>not</u> stable.  See <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore competent evidence in the record in order to justify his conclusion); <u>see</u> <u>also</u> <u>Reddick</u>, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); <u>Whitney v. Schweiker</u>, 695 F.2d 784, 788 (7th Cir. 1982) ("an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion") (citation omitted).  Moreover, the consultative examiner reported that while plaintiff's medications "control his symptoms to some extent[,] ... [h]e still complains of residual weakness, blurred vision and shortness of breath." [AR at 210.] The record reflects that plaintiff has been able to control his symptoms of ptosis[6] and diplopia[7] by increasing his dosages of Prednisone [see AR at 194, 200, 243, 311], but the Court has found no evidence that his symptoms of fatigue and shortness of breath are controlled with medication.[8]  Indeed, according to plaintiff, the only measure that has helped his fatigue is rest [see AR at 278, 283-84, 289, 295], and even the ALJ acknowledged that "despite treatment, [plaintiff] still complains of residual weakness." [AR at 15.]  For these reasons, the ALJ mischaracterized the evidence in the record when he stated that "[plaintiff's] course of medications help[s] him control his symptoms"

---

[6]  Ptosis is defined as "drooping of the upper eyelid from paralysis of the third nerve or from sympathetic innervation." <u>Dorland's Illustrated Medical Dictionary</u>, at 1490 (29th ed. 2000).

[7]  Diplopia is defined as "the perception of two images of a single object."  <u>Id.</u> at 508.

[8]  On July 2, 2007, Dr. Wei saw plaintiff and reported that: "[plaintiff had] Myasthenia Gravis exacerbation w[ith] ptosis and diplopia after last visit. Has been working requiring a lot of physical activity.  After he self increased Prednisone, the symptoms have improved." [AR at 194.]  While it is unclear to what symptoms Dr. Wei was referring in this report, the other three reports discussing plaintiff's control of his symptoms using medications refer only to ptosis and diplopia. Dr. Wei reported on January 18, 2007, that plaintiff "had diplopia but [it] resolved after he self increased Prednisone" [AR at 200], on April 29, 2008, that "[s]ince last visit, [plaintiff] states that his ptosis and diplopia have significantly improved with increase[d] dosage of [P]rednisone, but still has some weakness in the legs" [AR at 243], and on September 30, 2009, that "[s]ince last clinic visit ..., [plaintiff] has self increased Prednisone ... because of more diplopia and ptosis. He feels with increased dosage, the symptoms are getting better." [AR at 311.]

and is evidence of "medical improvement [that] render[s] his allegations concerning the intensity, duration, frequency, and purported limiting effects of [his] symptoms only partially credible." [AR at 17.] This was not a legitimate reason to find plaintiff only partially credible.

Finally, the ALJ also discounted plaintiff's pain testimony because he found that his "course of treatment has ... been quite conservative" for two reasons: (1) plaintiff "has required no surgeries, hospitalizations, complicated medication regimens, exquisite [sic] therapies, or any other extraordinary treatments," and (2) he "does not require any assistance [sic] device for ambulation." [AR at 17.]

The first of these two assertions by the ALJ is not wholly accurate, as plaintiff underwent surgery in 2005 to have his thymus gland removed [AR at 33, 207, 250], which the ALJ acknowledged in his decision. [See AR at 17.] Moreover, the ALJ pointed to nothing in the record to show that any additional surgeries, or that "hospitalizations, complicated medication regimens, exquisite therapies, or any other extraordinary treatments," are standard methods of treating myasthenia gravis. An "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion[s]." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (internal quotation marks and citations omitted); see also Day, 522 F.2d at 1156 (the ALJ should not have gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to the claimant's physical condition). Indeed, there is no evidence in the record from any physician that anything more could have been done that would have alleviated plaintiff's symptoms. See, e.g., Lapeirre-Gutt v. Astrue, 382 Fed.Appx. 662, 664 (9th Cir. 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."). Finally, plaintiff asserts, and defendant does not dispute, that there is no cure for myasthenia gravis. [See JS at 15, 18-23.] Thus, the ALJ's assertion that plaintiff "has required no surgeries, hospitalizations, complicated medication regimens, exquisite therapies, or any other extraordinary treatments" is not a specific and legitimate reason to discount his testimony concerning his pain and fatigue.

Second, that plaintiff does not require an assistive device to ambulate, by itself, is also not a legitimate reason to discount plaintiff's credibility. In concluding that plaintiff's lack of an

assistive device is evidence of "conservative" treatment, the ALJ cited only the consultative examiner's March 28, 2008, report, which stated that plaintiff "does not require an assistive aid to ambulate across the room." [AR at 210.] Plaintiff did not state that he has difficulty walking across a room, however, but that when he goes out, "most often [he] must stop and rest every 5 to 10 minutes to catch [his] breath and recover from the weakness in [his] legs." [AR at 140.] Given that plaintiff asserts that he suffers from shortness of breath and weakness in his legs after ambulating for 5 to 10 minutes, it is unclear how the fact that he does not use an assistive device for ambulation is "conservative" or otherwise inconsistent with plaintiff's statements regarding the severity of his symptoms. See, e.g., LaRose v. Astrue, 2010 WL 4272824, at *7 (C.D. Cal. Oct. 25, 2010) ("the fact that [plaintiff] is not prescribed an assistive device to ambulate is not dispositive" on the issue of whether plaintiff's subjective complaints of back and leg pain, numbness, weakness, and cramping were credible). Moreover, the Court is not persuaded that plaintiff's ability to walk for 5 to 10 minutes without an assistive device supports the ALJ's finding that plaintiff could sustain gainful employment, because the ability to walk for short periods without assistance does not necessarily translate into an ability to do activities that are "transferable to a work setting." See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (noting that a claimant is not required to be "utterly incapacitated" in order to be disabled and that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). To properly discredit a plaintiff's credibility based on his daily activities, the ALJ must find that plaintiff "is able to spend a *substantial part* of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quoting Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)) (emphasis in original).

The ALJ did not offer a legally adequate reason to discount plaintiff's subjective symptom testimony. Remand is warranted.

/

/

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly evaluate plaintiff's subjective symptom testimony. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 20, 2012

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE